**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TROY J. WASHINGTON, | |
| Petitioner, | Civil Action No. 20-531 (MAS) |
| v. | **OPINION** |
| THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, | |
| Respondent. | |

**SHIPP, District Judge**

This matter comes before the Court on Petitioner Troy J. Washington's Petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Following an order to answer, Respondents filed a response to the Petition (ECF Nos. 4-6), to which Petitioner replied. (ECF No. 10.) For the following reasons, this Court will deny the Petition, and will deny Petitioner a certificate of appealability.

## I.   BACKGROUND

In its opinion affirming Petitioner's conviction on direct appeal, the Superior Court of New Jersey – Appellate Division summarized the factual background of Petitioner's convictions as follows:

> [Petitioner was convicted] after a jury trial[] of first-degree armed robbery, . . . fourth-degree unlawful possession of a weapon, . . . third-degree possession of a weapon for unlawful purposes, . . . and disorderly persons simple assault . . . as a lesser-included offense. [Petitioner] was acquitted of second-degree aggravated assault[.]
>
> . . . .

The State presented its case through the testimony of Dana Valeri, Lake Estates Condominium Assistant Property Manager[;] Emelinda Owens, Lake Estates Condominium resident[;] and three East Brunswick policemen, Officer Crispin Farrace, Detective Michael Smith, and Sergeant Sean Goggins. The facts pertinent to this [matter] are as follows.

On September 3, 2010, a man entered the office of the Lake Estates Condominium Association and told Valeri that he was looking to rent an apartment unit based upon a referral from someone who worked for FedEx. Valeri told him there were no units available to rent. However, before leaving she had him write down his name and phone number to possibly contact him if a vacancy arose. Suspecting the man was referred by Owens, a Lake Estates resident Valeri believed worked for FedEx, Valeri sent Owens an email with a description of the man to confirm the reference. Owens replied that she did not refer anyone to rent an apartment. Owens testified that based on the email description, she believed the man was someone she knew as "True."

About two hours later, the man returned to the office. He asked for a business card and permission to use the bathroom. After using the bathroom, the man approached Valeri with a six-inch knife in his hand and demanded money that was stored in a locked cabinet. Valeri cooperated and gave him approximately $2,500 to $3,000. After turning over the money, the man, for no apparent reason, shoved her into a bathroom causing bruises on her body and a bump on her head, and then left the office.

Valeri subsequently called the police, and once they arrived at the office, she told them what happened. The police took pictures of the crime scene and were able to obtain fingerprints from the notebook in which the assistant had written his name and phone number. The fingerprints were found to be a match for [Petitioner.] About three weeks later, Valeri identified [Petitioner] in a photo array at the police station, stating she was eighty percent sure that he was the man who robbed her. Valeri also made an in-court identification of [Petitioner]. In addition, Owens identified [Petitioner] in a photo array and in-court as the man she knew as True.

[Petitioner] testified on his own behalf at trial. He asserted that he did not rob Valeri, but she was a party to a "scheme" with Owens to steal money from Lake Estates. He arranged with Owens and her boyfriend that he would go to the office to pick up the money from Valeri. When [Petitioner] first went into the office, Valeri told

him to write his name and phone number down [in the] notebook so she could call him later when it was time to get the money. [Petitioner] testified that he returned to the office after speaking with Owens and was given the money by Valeri.  He denied having a knife with him and touching or pushing Valeri.  He claimed that he kept $700 of the money with the remaining amount split between Owens and Valeri.

In addition to the aforementioned charges[,] . . . the jury was also charged [on the] lesser-included offenses of theft from the person . . . and theft by unlawful taking[.]

[Petitioner] was subsequently sentenced to fifteen years with an eighty-five percent parole ineligibility [term.]  . . . [Petitioner] was also given a six-month consecutive sentence for simple assault based upon [the trial judge's] finding that it was independent of and unrelated to the robbery.

(ECF No. 4-5 at 1-5.)

Petitioner appealed, arguing that his sentence was excessive and that the trial court erred in failing to charge the jury as to the crime of receiving stolen property, which he believed was a proper lesser included offense of the armed robbery charge on which he was indicted.  (*Id.* at 6.) The Appellate Division rejected both claims, finding that his sentence imposed was within the sentencing judge's discretion and not in excess of that authorized for Petitioner's distinct offenses, and explaining as follows on the stolen property lesser-included offense issue:

In *State v. Maloney*, 216 N.J. 91 (2013), the [New Jersey Supreme] Court directly addressed whether theft by receiving stolen property is a lesser-included offense of robbery.  The Court rejected the defendant's argument that he was entitled to a jury charge on the lesser-included offense of theft by receiving stolen property where he denied planning the armed robbery but claimed that he agreed to meet a co-defendant to pick up a portion of the robbery proceeds. *Id.* at 95.[]  [New Jersey courts are] not required to give an instruction on the alternative theory that the defendant could be considered an accomplice where the State's evidence only accuses defendant as a principle of the crime. *Id.* at 106. . .

In analyzing the statutory elements of the offenses of robbery and theft by receiving stolen property, the Court noted that the offenses do "not overlap" and that as such, theft by receiving

3

stolen property is not a lesser-included offense of robbery. *Id.* at 110. Robbery is committed in the course of committing a theft, when a person: "(1) [i]nflicts bodily injury or uses force upon another; or (2) [t]hreatens another with or purposely puts him in fear of immediate bodily injury; or (3) [c]ommits or threatens immediately to commit any crime of the first or second degree." *Id.* at 108[.] On the other hand, a person is guilty of theft by receiving stolen property, if he knowingly receives or brings into [New Jersey] movable property of another knowing that it has been stolen, or believing that it is probably stolen. *Ibid.* Simply put, robbery involves the "use of force or threatened use of force against the victim," whereas receiving stolen property is an offense against property. *Id.* at 110.

We thus conclude in accordance with *Maloney*, and despite [Petitioner's] testimony, there was no plain error in the trial court's failure to *sua sponte* charge the jury with the offense of theft by receiving stolen property. Receiving stolen property is not "established by proof of the same or less than all the facts required to establish the commission" of robbery as required . . . to be considered a lesser-included offense. These offenses have separate and distinct elements that must be proved. . .

Further, contrary to [Petitioner's] contention, the jury did not have only the "unfair choice" of finding [Petitioner] guilty of robbery or acquitting him. The trial court also charged the jury that if it did not find [him] guilty of robbery, it could find [him] guilty of the lesser-included offenses of theft of money from the person or theft by unlawful taking[, which involves the defendant "unlawfully tak[ing], or exercis[ing] unlawful control over, movable property of another with purpose to deprive him thereof."]

(ECF No. 4-5 at 8-15.) Following the Appellate Division's affirmance, Petitioner sought, but was

denied, certification to the New Jersey Supreme Court. (ECF No. 5-1.)

Following the conclusion of his direct appeal, Petitioner sought post-conviction relief

("PCR") in state court via a petition

alleging that his trial attorney provided him with ineffective legal assistance. Among other things, [Petitioner] asserted that the attorney failed to adequately investigate the whereabouts of Manuel Roman, an individual who [Petitioner] alleged was a partner in the "scheme" to steal money from Lake Estates. [Petitioner] also claimed that "the trial court should have accepted [his] plea" instead of forcing him to go to trial.

The [PCR] judge found that [Petitioner] was entitled to an evidentiary hearing on his petition. At the hearing, [Petitioner] claimed that Roman was Owen's boyfriend and that he, Roman, Owens, and Valeri agreed that Valeri would give money from Lake Estates to [Petitioner] and make it appear that it had been a robbery. The group would then split the proceeds of the theft. [Petitioner] produced a one-page letter from Roman to support this claim, but did not call him as a witness at the PCR hearing. [Petitioner] asserts that if his attorney had properly attempted to locate Roman in advance of the trial, Roman would have testified in support of his contention that the robbery had been staged, and he would only have been convicted of theft, rather than the more serious robbery, weapons, and assault charges.

[Petitioner] waived his attorney-client privilege and called his attorney as a witness at the hearing. The attorney testified that he represented [Petitioner] for about a year prior to the trial. During that period, [Petitioner] claimed he was not involved in the robbery and provided the names of several alibi witnesses to the attorney. The attorney filed an alibi notice prior to the trial, but none of the proposed witnesses would support [Petitioner]'s claim by testifying in court.

The attorney filed a motion to suppress the identification evidence. This motion was heard and denied by the trial court on January 17, 2012, the day before jury selection was to begin. After the hearing, [Petitioner] told the attorney that his alibi claim was false. Instead, [Petitioner] claimed for the first time that he, Roman, Owens, and Valeri had actually conspired to stage a robbery in order to steal money from Lake Estates.

At this time, [Petitioner] gave the attorney Roman's name, an address, and a telephone number. The attorney immediately added Roman to [Petitioner]'s witness list, and called his office to have an investigator attempt to locate Roman through a "post office search" and by calling the telephone number. However, Roman did not live at the address [Petitioner] provided, and no one ever answered the telephone at the number [Petitioner] gave the attorney. [Petitioner] was not able to provide any additional contact information for Roman. The attorney asked Owens on cross-examination whether she had an address or telephone number for Roman, but she did not. The attorney also questioned Owens about her alleged role in the scheme, and called [Petitioner] as a witness so he could provide his account to the jury.[]

Under these circumstances, the judge concluded in her written decision that the attorney had done all he could to attempt to locate Roman, especially in light of the fact that [Petitioner] waited until the eve of trial to abandon his false alibi claim in favor of his new assertion that the robbery was staged. Therefore, the judge found that the attorney did not provide ineffective assistance. In explaining her decision, the [PCR] judge stated:

> This court has had the opportunity to observe the demeanor and credibility of [Petitioner's] trial counsel during the evidentiary hearing and finds his testimony to be very credible. This [c]ourt finds that trial counsel put forth a concerted effort to find any named person that [Petitioner] presented to him as a potential witness, both under the original alibi defense and the conspiracy defense. The alibi defense was first developed and subsequently failed when [Petitioner's] witnesses failed to appear in court and testify on [Petitioner's] behalf. This [c]ourt finds [Petitioner's] counsel, from the beginning, vigorously attempted to abide by [Petitioner's] wishes even when [Petitioner] provided him with witnesses that were unwilling to substantiate an alibi defense for [Petitioner]. Even when [Petitioner] failed to provide Mr. Roman's name to his attorney immediately rather than attempt several non-credible defenses.

Turning to [Petitioner]'s claim that the judge "should have accepted" his plea, [Petitioner] failed to present any evidence that he ever pled guilty to any of the offenses prior to the trial. The State and [Petitioner]'s attorney discussed the possibility of a plea before the suppression hearing on January 17, 2012. At that time, the State had offered to recommend that [Petitioner] be sentenced to seven years in prison, [with a parole ineligibility term], if he pled guilty to robbery, but advised him that the offer would be withdrawn if the hearing proceeded. [Petitioner] elected to reject the plea offer, and the trial court thereafter denied his suppression motion.

Nevertheless, the assistant prosecutor stated that she was willing to ask her supervisors if she could renew the seven-year plea offer, and promised to let [Petitioner] and his attorney know the next day if this was still possible. The following day, the prosecutor reported the seven-year offer was still off the table, but that her office would accept a plea if [Petitioner] agreed to serve nine years, [with a parole ineligibility term]. [Petitioner] rejected this offer and proceeded to trial.

(ECF No. 6 at 2-3.)

On appeal, the Appellate Division affirmed the denial of Petitioner's PCR petition. (*Id.* at 3-4.) The Appellate Division rejected Petitioner's claim related to the failure to locate Roman substantially for the reasons set forth by the PCR judge – that Petitioner's attorney had done all he could under the circumstances and had not been deficient – and rejected on the merits Petitioner's "bald claim" that he had ever attempted to plead guilty to any of his charges. (*Id.* at 4.) On this last claim, the Appellate Division explained that

> [t]he trial record reveals that [Petitioner] never pled guilty at any time to any offense prior to the trial. Instead, he rejected each and every offer the State presented. At the evidentiary hearing, he acknowledged that the assistant prosecutor advised him that she would attempt to obtain permission from her office to renew the seven-year offer, but she was unable to do so. [Petitioner] then rejected the nine-year offer and the matter proceeded to trial.
>
> It is well established that a plea bargain cannot be imposed upon a defendant and, by the same token, a defendant has no legal entitlement to compel a plea offer or a plea bargain; the decision whether to engage in such bargaining rests with the prosecutor. Moreover, a defendant has no right to require the prosecutor to re-offer a plea which has been rejected by the defendant.
>
> Contrary to [Petitioner]'s baseless assertions, there is simply no evidence in either the trial record or the record developed at the PCR hearing to support his claim that he ever pled guilty to an offense or that the [trial] judge refused to accept his plea. Therefore, we reject [Petitioner]'s contention on this point.

(*Id.*, internal quotations and citations omitted.) Petitioner thereafter sought certification from the New Jersey Supreme Court, but his petition was denied. (ECF No. 6-1.)

## II.     LEGAL STANDARD

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United

States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846-47 (3d Cir. 2013). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III.    __DISCUSSION__[1]

In his habeas petition, Petitioner raises the following claims: a claim in which he argues trial counsel was ineffective in failing to seek a jury charge on receipt of stolen property, which he believes is a proper lesser included offense of robbery, and that the state courts erred in refusing to require such a charge in this matter;[2] a claim asserting that counsel was ineffective in failing to call Roman as a witness at trial; a claim in which he asserts that he did, in fact, plead guilty and the trial judge erred in not accepting that plea; a claim in which he asserts that the trial judge erred in asking questions of the state witnesses before the jury while not asking similar numbers of questions of defense witnesses and that trial counsel was ineffective in failing to object to this

---

[1] In the answer, Respondent argues that several of Petitioner's claims are unexhausted and that the dismissal of Petitioner's habeas petition is warranted as a result. This argument, however, appears to largely rest on Respondent's assertion that a claim remains unexhausted when the New Jersey Supreme Court denies certification and therefore refuses to hear a discretionary appeal, based on a severely strained reading of *Castille v. Peoples*, 489 U.S. 346, 351 (1989). *Castille*, however does not stand for the proposition that a claim remains unexhausted when a state high court refuses, on its own discretion, to hear a defendant's appeal, or a petitioner only raises a claim to appellate courts through a pre-trial interlocutory effort. *Id.* at 350-51. While all criminal defendants in New Jersey have the "right" to present their claims to the New Jersey Supreme Court in a petition for certification, few, if any, have the "right" to have the New Jersey Supreme Court actually take their case, and thus a denied petition for certification is sufficient to exhaust the claims a petitioner raised in his petition. Were this Court to hold otherwise, nearly no claim in New Jersey could ever be considered exhausted in light of the very limited number of cases the state supreme court is able to take in a calendar year. Although it is not clear, it is possible to read Respondent as also implying that further claims may be unexhausted for never having been clearly presented in their current form. To the extent that any of Petitioner's claims are unexhausted in this fashion – a determination this Court cannot clearly make on the record before it – this Court may and does deny that claim on the merits for the reasons set forth in this opinion. *See* 28 U.S.C. § 2254(b)(2).

[2] This claim includes both Petitioner's Point One, in which he makes that argument directly, and Point Seven, in which he argues that the state misrepresented the controlling state law on the issue of lesser included offenses of robbery.

practice; and a final claim in which Plaintiff asserts that he was somehow prejudiced by the trial judge agreeing with the defense during a jury charge conference. As to this last claim, Plaintiff provides little more than a conclusory allegation without so much as an identified error associated with the trial judge's agreement with the defense. As Plaintiff has failed in any way to identify how this agreement prejudiced his defense, any error associated with this conclusory allegation is harmless and serves as no basis for habeas relief. *See Fry v. Pliler*, 551 U.S. 112, 115-16 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993), for the proposition that even constitutional claims will be held harmless on collateral review unless the petitioner shows they had a substantial and injurious effect upon the jury's verdict). Plaintiff's claim regarding the judge's agreeing with the defense is therefore denied.

Most of Plaintiff's remaining claims involve or are intertwined with allegations that Petitioner suffered ineffective assistance of counsel. The standard applicable to Petitioner's claims of ineffective assistance of counsel is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the

particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

In his first set of ineffective assistance of counsel claims, Plaintiff alleges both that the state courts should have required a charge as to receipt of stolen property in his criminal trial as a lesser-included offense of robbery and that his trial counsel was ineffective in failing to seek such a charge. That a jury "instruction was allegedly incorrect under state law is not a basis for habeas relief." *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir.) (quoting *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991)), *cert. denied*, 534 U.S. 919 (2001). A petitioner can therefore only show an entitlement to habeas relief based upon allegedly inadequate jury instructions where the petitioner proves that the ailing instruction by itself so infected the entire trial that the resulting conviction

violates due process." *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). That a challenged instruction was "undesirable, erroneous, or even universally condemned," is insufficient to warrant habeas relief; a petitioner can only prevail on such a claim by showing that the instruction rendered his trial fundamentally unfair. *Id.*

Here, the Appellate Division, following controlling New Jersey caselaw, ruled that theft by receipt of stolen property *is not* a lesser included offense of robbery, and that Petitioner was therefore not entitled to such a charge as he was not charged with that crime. (ECF No. 4-5 at 8-15.) The appropriate lesser included offense for the conduct in which he claimed to have engaged would instead be the theft of money or theft by unlawful taking charges with which the jury in Petitioner's case was charged. (*Id.*) As Petitioner received the appropriate lesser-included offense charge, as he was not entitled to a charge on the non-lesser included offense of receipt of stolen property, and because the jury clearly rejected Petitioner's version of events in finding him guilty of robbery, weapons charges, and the simple assault of Valeri rather than either of the charged lesser included offenses, Petitioner has not shown that the state courts erred, let alone that such errors rendered his trial fundamentally unfair. Petitioner is therefore not entitled to relief on his claim that the trial court erred in failing to charge the jury on receipt of stolen property. Petitioner's claim of ineffective assistance arising from counsel's failure to request such a charge likewise fails as it is clear that any such request would have been denied in light of controlling state law. *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (counsel cannot be ineffective in failing to raise a meritless argument); *see also United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011) (same). Petitioner's jury charge related claims therefore serve as no basis for habeas relief.

Petitioner next asserts that trial counsel was ineffective in failing to find and call Roman as a witness at trial. That claim, however, fails for the exact reasons found by the state PCR courts: counsel was not told of Roman's existence until the eve of trial, counsel made sufficient effort to

attempt to find Roman to call as a witness, and it is by no means clear that Roman would have been keen to testify at the time of Petitioner's original trial in any event as the testimony Petitioner would have wished him to provide would have incriminated himself and his alleged girlfriend.  In light of the credibility findings of the PCR court – which this Court may not reject in the absence of clear and convincing evidence that they were mistaken, which Petitioner has utterly failed to provide – it is clear that counsel was not deficient and in fact took significant steps to attempt to find and call Roman as a witness.  Plaintiff's ineffective assistance claim on that ground therefore fails to state a valid basis for habeas relief.[3] *Judge*, 119 F. Supp. 3d at 280-81.

Petitioner next contends that the trial judge erred in asking more questions of the state's witnesses than of the defense's witnesses, and that trial counsel was ineffective in failing to object

---

[3] In his reply brief, Petitioner presents several arguments in support of this ground, one of which is entirely new and was raised for the first time in reply.  In this new argument, Petitioner contends that his ineffective assistance claim is well supported because his dissatisfaction with counsel was well known prior to trial, even to the point of claiming that he filed a motion seeking to replace counsel which was not addressed by the trial court.  To the extent that Petitioner simply raises his dissatisfaction because he believes it provides evidence of ineffective assistance of counsel, he is mistaken as the question of whether counsel was deficient is not dependent upon Petitioner's satisfaction, and instead depends entirely on the question of whether counsel was objectively deficient and that deficiency likely had an effect upon the outcome of trial.  *See, e.g., Jacobs*, 395 F.3d at 102.  To the extent Petitioner is attempting to raise an entirely new claim of error – that he is entitled to habeas relief because a motion to replace counsel was not properly handled by the trial court – he may not raise such a new claim for the first time in a reply brief, and this Court need not address the merits of this potential claim as such.  *Judge*, 119 F. Supp. 3d at 284 (habeas petitioner may not raise a claim for the first time in a reply brief, and courts should decline to address claims raised solely in reply).  Even were this Court inclined to address the claim, it is not clear that this claim would be properly exhausted, and it is clear that such a claim is almost certainly time barred as the claim does not relate back to any of Petitioner's previously raised claim and was raised for the first time in September 2020, more than nine months after he filed his habeas petition and fourteen months after the New Jersey Supreme Court denied his petition for certification.  *See, e.g., Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013); *Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 84 (3d Cir. 2013).  In any event, this Court need not resolve the timeliness as it is both unclear that Petitioner intended to raise a truly new claim regarding the failure of the trial court to rule on his counsel replacement motion, and he in has in any event made no efforts to amend his habeas petition to include such a claim and instead asserted it improperly only as part of a reply brief.  *Judge*, 119 F. Supp. 3d at 284.

to the trial judge's questioning.  Under both federal and New Jersey law, a trial judge in a criminal proceeding has the authority to question the witnesses presented by either party in an effort to clarify perceived ambiguities in the evidence presented at trial.  *See, e.g., Macon v. Power*, No. 07-2806, 2008 WL 4490196, at *4-5 (D.N.J. Sept. 29, 2008); *see also United States v. Ottaviano*, 738 F.3d 586, 595 (3d Cir. 2013).  A trial judge engaged in such questioning, however, must take care "to avoid any implication of bias to the jury as to [the defendant's] guilt."  *Macon*, 2008 WL 4490196 at *5; *Ottaviano*, 738 F.3d at 595.  A judge's questioning of witnesses, without more, does not raise a specter of bias, and "it is not the number of questions at issue, but whether the defendant was prejudiced" that is considered in determining whether a constitutional violation occurred.  *Macon*, 2008 WL 4490196 at *5.  In his habeas petition, Petitioner fails to identify any specific question or series of questions that prejudiced him, and instead relies only on the fact that the trial judge asked more questions of state witnesses than those presented by the defense, a disparity that is not surprising given that most of the witnesses at trial were presented by the prosecution, and the trial judge would obviously be more reticent to interject himself into a criminal defendant's own testimony.  As it is not the number of questions posed, but rather the prejudiced suffered that is of importance, *id.*, and as Petitioner has utterly failed to show that he was actually prejudiced by the trial judge's questioning, his claim must fail regardless of whether raised as a claim of trial court error or as a claim of ineffective assistance of counsel premised on counsel's failure to object.  *Id.*; *Fry*, 551 U.S. at 115-16; *Palmer*, 592 F.3d at 395 (ineffective assistance claim that does not contain argument or evidence as to prejudice provides no basis for habeas relief).  Petitioner's judicial questioning related trial error and ineffective assistance of counsel claims are therefore without merit and provide no basis for habeas relief.

In his final claim, Petitioner argues that during a pre-trial conference, he attempted to plead guilty, but the trial judge refused to accept his guilty plea.  The Appellate Division rejected this

claim as the evidence presented during the PCR hearing clearly indicated that no plea agreement was ever reached between the parties, and nothing in the record other than Petitioner's own bald assertion supported the conclusion that Petitioner had ever so much as attempted to plead guilty. (ECF No. 6 at 2-4.) That conclusion is well supported by the record – there is simply no evidence other than Petitioner's bald assertion that any attempt at a guilty plea was ever made, and the evidence which was developed prior to trial and at the PCR hearing clearly indicates that Petitioner rejected the offered plea agreements, and no plea agreement was therefore ever consummated. As the Appellate Division's conclusion that the evidence does not support Petitioner's bald assertion that he sought to plead guilty is well supported by the evidence in the record, this Court finds that the Appellate Divisions' decision did not amount to an unreasonable determination of the facts at hand. Likewise, as Petitioner has utterly failed to show that the Appellate Division misapplied or misconstrued federal law in rejecting Petitioner's claim as baseless and unsupported by the record, Petitioner's plea related claim provides no basis for habeas relief. *See* 28 U.S.C. § 2254(d)(1)-(2). As all of Plaintiff's claims are therefore without merit, Petitioner's habeas petition is denied.

IV.   **CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "[A petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude [that] the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's habeas claims are all without merit for the reasons set forth above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is

not adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

## V.    <u>CONCLUSION</u>

In conclusion, Petitioner's habeas petition (ECF No. 1) is **DENIED**, and Petitioner is **DENIED** a certificate of appealability. An appropriate order follows.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE